**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FANNIE HALL, et al.,** | ) | **Case No.  1:10 CV 1559** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **UNITED STATES POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is the Motion to Dismiss Amended Complaint, or in the Alternative, for

Summary Judgment (**Doc #: 10**).   Plaintiffs Fannie Hall, the City of East Cleveland, East

Cleveland Mayor Gary A. Norton, Jr. and East Cleveland City Council members Mildred

Brewer, Joy A. Jordan, Chantelle C. Lewis and Nathaniel Martin have sued Defendant United

States Postal Service ("Postal Service" or "USPS") for injunctive relief.  Plaintiffs contend that

the Postal Service's recent transfer of backroom mail sorting (or, casing) operations and the duty

stations of all but a few employees from the East Cleveland station to neighboring postal

facilities constitutes a "consolidation" requiring sixty-day notice to patrons, under 39 U.S.C.

§ 404(d)(1).[1]

Because the Court finds that such transfer does not constitute a consolidation, the Court

**GRANTS** the Motion to Dismiss Amended Complaint.

---

[1]39 U.S.C. § 404(b), as cited on occasion in the briefs and case law, was redesignated as
§ 404(d) in 2006.  The Court will refer to the statute in question as § 404(d).

## I.

On July 14, 2010, Plaintiff Fannie Hall, a resident of East Cleveland, Ohio, filed a Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction along with a memorandum in support and affidavit of East Cleveland Law Director Ronald K. Riley, Esq. (Doc #: 1).  Therein, Hall alleged that, based upon rumor, the Postal Service planned to either close its East Cleveland station or consolidate its services with the Cleveland Heights branch or the Cleveland post office on or about July 18, 2010.  Hall alleged that such closure or consolidation would deprive East Clevelanders, most of whom subsist on fixed-incomes, of vital local services – and that it would have a serious negative economic impact on the City.  Hall asserted that the Postal Service violated 39 U.S.C. § 404(d)(1) by failing to provide 60-day notice to East Cleveland station patrons prior to its closure or consolidation, and sought injunctive relief to prevent the Postal Service from taking this action.

On July 20, 2010, the Court held a teleconference with counsel.  At that time, the Court noted that the Postal Service had not been properly served, and directed Hall's counsel to effect proper service.  The Court learned that the Postal Service intended to move certain of the duties of the East Cleveland carriers to the Cleveland Heights branch, while the carriers would continue to deliver mail to East Cleveland residents – and that the Postal Service still planned to keep the East Cleveland station open for retail services with two to three employees covering the window. Counsel for the Postal Service challenged Hall's assertion that this a "consolidation" requiring 60-day notice under § 404(d)(1).   The Court scheduled an in-person conference on July 28, 2010 to discuss the request for temporary restraining order (the "TRO motion").  In light of the upcoming conference, the Court directed the Postal Service to send a letter to East Cleveland

Mayor Norton stating in detail the Postal Service's plans, the economic impact the Postal Service expected those plans to have on the City, and the duty station of the carriers.  (Doc #: 6.)

On July 27, 2010, the Postal Service sent to the Court a copy of the letter it sent to Mayor Norton.  Therein, the Postal Service stated that, on July 17, 2010, it had relocated the casing operations of 73 letter carriers, along with their duty stations, from the East Cleveland station to the Cleveland Heights branch or the Cleveland post office.  The Postal Service noted that the carriers who deliver mail in East Cleveland would continue to deliver their routes per usual; the Postal Service had made no changes to the retail services available at the East Cleveland station; and no carrier jobs were lost as a result of the changes.  Further, because the Postal Service was not permitted to withhold local taxes, it was unable to speculate how the July 17 changes would impact local tax revenue.  The Postal Service stated that it remained committed to providing quality postal services to East Cleveland residents and businesses, as emphasized during the various conversations and meetings the Postal Service had with East Clevelanders on this topic. The Postal Service pointed out that, beginning in April 2010, it had notified East Cleveland of the upcoming change in services, both by telephone and during in-person meetings with the Mayor, Councilman Nathaniel Martin and concerned citizens.  Finally, the Postal Service explained that it expected the relocation of casing operations and carriers to save the Postal Service at least $2.1 million over 10 years with no degradation of service to East Cleveland customers.

The Postal Service subsequently filed a Motion to Dismiss or, in the Alternative, for Summary Judgment challenging Hall's standing to bring the action and the TRO motion.  (Doc #: 7.)  Hall then filed a Motion to Amend Complaint for the purpose of adding the Mayor, the

City and City Council members as plaintiffs, along with a Verified Petition and Request for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.  (Doc #: 9.) The Court granted Hall's Motion to Amend Complaint.  (See 8/2/10 non-doc entry.)

On July 28, 2010, the Court held a conference with most Plaintiffs, representatives of the Postal Service, and their counsel.  After some discussion, the Court articulated its ruling denying the TRO motion on two bases.  The Court determined that Plaintiffs could not show irreparable harm under Rule 65(b)(1)(A) because there would be no change in service to East Cleveland residents.  The Court also determined that Plaintiffs could not show a likelihood of success on the merits because the change in services did not appear to constitute a closing or consolidation necessitating 60-day notice under 39 U.S.C. § 404(d)(1), and Plaintiffs had not cited a single case in its memorandum showing otherwise.  Although it appears that certain Plaintiffs were well aware of the Postal Service plans in advance, all Plaintiffs conceded at the conference that the July 27, 2010 USPS letter to Mayor Norton sufficiently constituted "notice" under § 404(d)(1), triggering the 60-day clock for the parties to discuss the recent changes after which Plaintiffs could file administrative appeals.  Plaintiffs informed the Court that at least one East Cleveland resident had already filed an administrative appeal.  After the Postal Service stated its intention to file a motion to dismiss the amended complaint, the Court asked the parties how long they would need to conduct any discovery and brief the issues raised in the motion, and the parties agreed on a briefing schedule.  After the conclusion of the conference, the Court issued a Minutes entry reflecting these discussions, the Court's ruling denying the TRO motion and the parties' agreed briefing schedule.  (Doc #: 11.)

On August 2, 2010, the Postal Service filed the pending Motion to Dismiss Amended Complaint, or in the Alternative, for Summary Judgment.   (Doc #: 10.)  Therein, the Postal Service asks the Court to dismiss this case as a matter of law for lack of jurisdiction and for failure to state a claim.  The Court has reviewed the Motion, the response brief (Doc #: 12), the reply (Doc #: 14), the attachments thereto and the relevant cases and is prepared to issue its ruling.

## II.

The Court has jurisdiction over this matter pursuant to 39 U.S.C. § 409.  *See also Citizens for the Hopkins Post Office v. U.S. Postal Service*, 830 F.Supp. 296, 298 (D.S.C. 1993).

Defendants seek to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  "The first step in testing the sufficiency of the complaint is to identify any conclusory allegations."  *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at \*1 (S.D. Ohio Aug. 19, 2009) (citing *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).  550 U.S. 544, 555 (2009)).  "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 120 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' "  *Simpson*, 2009 WL 2591682, at \*1 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 129 S.Ct. at 1949

(quoting *Twombly*, 550 U.S. at 550).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id*.  More is required than "unadorned, the-defendant-unlawfully-

harmed me accusations."  *Id*.

**III.**

Specific powers of the Postal Service are delineated at 39 U.S.C. § 404 which provides,

in pertinent part:

> (a)  Subject to the provisions of section 404a, but otherwise without limitation of the generality of its powers, the Postal Service shall have the following specific powers, among others:
>
>   (1)  to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail;
>
>       . . .
>
>   (3)  to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed;
>
>       . . .
>
> (d)(1)  The Postal Service, prior to making a determination under subsection (a)(3) of this section as to the necessity for the closing or consolidation of any post office, shall provide adequate notice of its intention to close or consolidate such post office at least 60 days prior to the proposed date of such closing or consolidation to persons served by such post office to ensure that such persons will have an opportunity to present their views.
>
>   (2)  The Postal Service, in making a determination whether or not to close or consolidate a post office –
>
>       (A) shall consider –
>
>        (i)  the effect of such closing or consolidation on the community served by such post office;

(ii)  the effect of such closing or consolidation on employees of the Postal Service employed at such office;

(iii)  whether such closing or consolidation is consistent with the policy of the Government, as stated in section 101(b) of this title, that the Postal Service shall provide a maximum degree of effective and regular postal services to rural areas, communities, and small towns where post offices are not self-sustaining;

(iv)  the economic savings to the Postal Service resulting from such closing or consolidation; and

(v)  such factors as the Postal Service determines are necessary;

. . .

(3)  Any determination of the Postal Service to close or consolidate a post office shall be in writing and shall include the findings of the Postal Service with respect to the considerations required to be made under paragraph (2) of this subsection. Such determination and findings shall be made available to persons served by such post office.

Plaintiffs contend that the actions undertaken by the Postal Service constitute a "consolidation" with other facilities, thereby entitling them to written notice, an opportunity to present the views of the community, and a right to administrative appeal.  Plaintiffs are primarily concerned with a potential loss of services to East Cleveland patrons and what Plaintiffs anticipate to be a devastating financial blow to their City.  The Postal Service argues that written notice was not required because, as a matter of law, the transfer of mail sorting operations and employees is a managerial decision that does not constitute a consolidation under § 404(d)(1) necessitating 60-day written notice.  In support of this position, the Postal Service cites *Citizens for the Hopkins Post Office v. U.S. Postal Serv.*, 830 F.Supp. 296, 299-300 (D.S.C. 1993); *Knapp v. U.S. Postal Serv.*, 449 F.Supp. 158, 162-63 (E.D. Mich. 1978); and *Wilson v. U.S. Postal Serv.*, 441 F.Supp.803, 806 (C.D. Cal. 1977).

Although the Court is sensitive to Plaintiffs' concerns about the economic impact the transfer of sorting operations and duty stations may have on the City, even Plaintiffs concede that the only question before the Court is whether the actions taken by the Postal Service (i.e., transfer of the casing operations and a number of employees to neighboring facilities) constitute a consolidation, requiring written notice to affected persons. (See Doc #: 12, at 2.) The district court cases cited by the Postal Service are the only cases the Court can find on this subject. These courts have unanimously concluded that the transfer of casing operations and some, but not all, employees does not constitute a consolidation entitling affected patrons to 60-day notice under 39 U.S.C. § 404(d)(1).

In *Wilson v. U.S. Postal Service*, 441 F.Supp.803 (C.D. Calif. 1977), plaintiffs sought to restrain the transfer of certain mail processing functions, previously performed by twenty-six local post offices in western Los Angeles County, to a single postal facility. There, plaintiffs argued that the performance of mail processing function "is the very essence of a post office; and that, therefore, relocation of these functions constitutes a consolidation of post offices." *Id.*, 441 F.Supp. at 805. The Postal Service conceded that it did not provide notice, or prepare any written determination prior to implementing the change, because it did not constitute a "consolidation." The district court observed what it termed "the conflicting policies" underpinning the Postal Reorganization Act.

> The Postal Service emphasizes the goal of vesting in management the freedom to make decisions without external constraints. The plaintiffs counter with the goal of providing to the American people a public service which is sensitive and responsive to their needs. Although these policies conflict to some extent, we think a balance may be struck whereby management is given the freedom to manage without unnecessary limitations and the public is given an opportunity to present their views on decisions of the Postal Service which affect them.

*Id*. (quoting *Buchanan v. U.S. Postal Service*, 508 F.2d 259, 262 (5th Cir. 1975)).  The court then

determined that § 404(d)(1) was intended to mitigate the potential adverse effect on the

continued identity of small communities that may arise when small post offices are closed or

consolidated – and that the section was not intended to undermine the broad management power

of the Postal Service.  As such, the court concluded that the relocation of mail processing

functions constituted an internal management decision and not the consolidation envisioned by

Congress when enacting § 404(d)(1).  The court observed that the transfer of mail processing

functions was part of a national program designed to secure more efficient and economical mail

delivery as a consequence of centralized, mechanized sorting procedures; and that the local post

offices in question would remain in existence with little effect on postal services.

In *Knapp v. U.S. Postal Service*, 449 F.Supp.158 (E.D. Mich. 1978), the Postal Service

announced its intention to relocate the bulk mail sorting operations for several Detroit

metropolitan area post offices, performed manually, to facilities having the capacity to perform

the same services mechanically.  Once the sorting was completed, the mail would then be

returned to the post office from which it came for distribution as in the past.  Although the

change of operations required the transfer of certain personnel from the post offices in question

to the new mail sorting locations, it did not result in a loss of jobs or a reduction in services to

the patrons served by the post offices in question.  Plaintiffs (patrons and postal workers) sought

a court order requiring the Postal Service, which admitted not having provided written notice

under § 404(d)(1), to provide such notice prior to the change in operations.  The court, observing

that § 404(d) was clearly intended to deal with the physical closure or consolidation of primarily

rural post offices, and that services to patrons would be continued at each of the offices,

concluded that the contemplated transfer of bulk mail sorting operations did not constitute a

closing or consolidation necessitating § 404(d)(1) written notice.

In *Citizens for the Hopkins Post Office v. U.S. Postal Service*, 830 F.Supp.296 (D.S.C.

1993), plaintiffs (a citizens group) contended that the transfer of casing operations and eight

employees from a local post office (Hopkins) to a neighboring post office constituted a

consolidation under § 404(d)(1).  Plaintiffs argued that they were entitled to written notice and a

hearing before the alleged consolidation took place, and sought a court order directing the return

of the postal employees to the office from which they had been reassigned.  The Postal Service

argued that its actions were operational in nature, did not constitute a consolidation and, thus,

did not require written notice under § 404(d)(1).  The court agreed with the definition of

"consolidation" advanced by the Postal Service; i.e., an action in which a post office would lose

its independence and individual identity.  The court found that there had been no consolidation

because the postmaster continued to operate the post office and was responsible for the day-to-

day management of that office (albeit she was the only employee), and postal services rendered

to patrons continued with nearly imperceptible change.  The court noted that the Postal Service

was given significant leeway, within limits, to determine the appropriate methods to be used for

the collection and delivery of the mail – and that the transfer of mail sorting operations and

employees to a neighboring office under these circumstances was a managerial decision within

the province of the Postal Service.

The Court can find no meaningful distinction between the facts of *Wilson*, *Knapp* and

*Citizens* and the facts of the instant case.  Here, the Postal Service transferred the casing

operations of the East Cleveland station, and the duty station of 73 carriers, to neighboring postal

facilities.  The carriers will spend one to two hours a day sorting the mail at the neighboring

facilities before returning to East Cleveland to deliver the mail.  The East Cleveland station will

remain open for retail services.  Thus, the impact on postal services in the City will be negligible.

As such, the Court concludes that the actions undertaken by the Postal Service on July 17, 2010

did not constitute a consolidation requiring written notice.

Plaintiffs question whether the Postal Service will actually save $200,000 per year due to

this action.  (Doc #: 12, at 5, 8-9.)  They argue that the alleged savings to the Postal Service

pales in comparison to the loss of local tax revenue to East Cleveland from the transfer of

employee duty stations.  While this may be true, such factor does not convert a managerial

decision into the physical consolidation contemplated by § 404(d)(1).

The Court observes, in passing, that the decision by the Postal Service to transfer East

Cleveland operations and employees, while not in writing, was not exactly a covert operation.

Plaintiffs do not dispute the Declaration of Victor Dubina, Postal Service Communications

Specialist, attesting that he and other USPS representatives discussed the proposed transfer plans

(over the telephone, in person, and in the presence of aides to Congresswoman Marcia Fudge

and Senator Sherrod Brown) with numerous East Clevelanders prior to July 17, 2010 – including

Plaintiffs Norton, Martin and Hall, as well as other concerned citizens.  (Doc #: 12, at 3-4.)

**IV.**

In short, the Court finds that the transfer of mail casing operations and all but a few

employees from the East Cleveland station to neighboring facilities, absent the closing of the

East Cleveland station and without any appreciable loss of service to its patrons, did not

constitute a consolidation within the meaning of 39 U.S.C. § 404(d)(1).  Because Plaintiffs

-11-

cannot succeed on the merits of their complaint, they are not entitled to the injunctive relief they

seek.  Accordingly, the Court hereby **GRANTS** the Motion to Dismiss Amended Complaint, or

in the Alternative, for Summary Judgment (**Doc #: 10**).

    **IT IS SO ORDERED.**


                     */s/ Dan A. Polster    October 13, 2010*
                     **Dan Aaron Polster**
                     **United States District Judge**